Nicholson, C. J.,
delivered the opinion of the court.
Complainant filed his bill in the Chancery Court at Sevierville, to enjoin the prosecution of an action of law pending in- the Circuit Court of Sevier county, in which M. F. Smith was plaintiff, and complainant was defendant.
The suit was instituted on a note for $700 executed in April, 1867, by complainant to Camp & Dug- *168 gan, for services as attorneys-at-law, and by them assigned after its maturity to M. F. Smith.
Complainant alleges that he retained Camp & Dug-gan as lawyers in four cases in the Circuit Court of Sevier county, one criminal and three civil cases; that in 1866, he gave his note to them for $50 as a retaining fee, and agreed to pay them $100 in each of said causes that might be tried in said Circuit Court.
He alleges further, that in April, 1867, being old and of weak mind, and greatly harrassed and annoyed and troubled about his business, the said Camp took advantage of these things and overreached him and practiced a gross fraud on him, in procuring him against his will to execute the note for $700, when in fact at the time he was not owing Camp & Dug-gan more than $350. Smith, the assignee of the note, and Camp & Duggan were made defendants to the bill. Smith answers that he received the note after it was due, but denies that the assignment was fraudulent or for any other than a valuable consideration. Defendants Camp & Duggan answer separately: they state that they were employed to attend to six cases then pending in the Circuit Court of Sevier, one against complainant for larceny, one against him for robbery, and four civil cases for trespasses, involving damages claimed to an amount between $60,000 and $70,000, but they deny that they undertook to attend to these cases for $100 each, for such as might be tried, and state that there was no contract for any specific amount of compensation, until April, 1867, when the note for $700 was executed. They state *169 that at that, time five of the cases in which they had been employed had been disposed of, and that they had performed all the services necessary in those cases to bring them to a successful termination. They state that one of the cases was still pending, but in the settlement which then took place, and which resulted in the giving of the $700 note, they agreed to go on and attend to that case, which they have at all times been ready and willing to do, without additional compensation.
They deny that any advantage was taken of complainant, or that he executed the note unwillingly, or that he was overreached, or in any way improperly influenced to give the note. They state that the several items of their account were made out and shown to complainant, that he was . satisfied with their charges, and freely and understandingly executed his note, agreeing that the charges were reasonable, and receiving from them a receipt in full by note, in which they agreed to continue to attend to the only remaining case. They repel emphatically every charge of fraud, or improper conduct, and insist that their services were reasonably worth $750. They insist that complainant was fully capable of attending intelligently to his own business, and that he fully understood the transaction and freely assented thereto.
Complainant wholly fails to support the allegations of his bill as to any special contract, or as to the number of cases in which Camp & Duggan were employed by him, and as to any fraud or improper conduct in the procurement of the $700 note. On *170 the contrary it is amply proven tbat defendants, Camp & Duggan, were employed by complainant in six important causes, two criminal and four civil; that they performed all the services necessary for the successful termination of five of them, and that they were ready and willing to finish the sixth case when they were discharged from it by complainant. It is shown that the note for $700 was executed. freely and voluntarily, after a settlement with which complainant was satisfied, and that nothing like fraudulent appliances or threats were used in making the settlement or in procuring the note. The proof fully supports the responses of defendants in their answer. But there is one feature in the case which makes it necessary to examine it in another aspect. It was a transaction between client and attorney, and it must therefore be governed by the rules which have been established by courts of equity for the determination of questions growing out of this fidiciary relation. In controversies between client and attorney the law is severely exacting in its requirements of the latter, applying to such transactions wholly different rules from those which govern controvei-sies between parties where there is no such confidential relation. After a very exhaustive examination of these rules as deduei-ble from the decision of courts of equity in England and the United States, in the case of Planter’s Bank v. Hornberger, 4 Col., 578, Judge East, Special Judge, lays them down in detail. " Among them as applicable to the present case are the following: That the means used by the attorney to obtain the contract be *171 free, not only of fraud, actual or constructive, but also of all other inequitable consideration. That he does not contract for a greater benefit than his services are reasonably worth, with reference to the trouble and difficulties of the particular case, amount involved, either of pecuniary character or reputation personally, etc.
That the onus shall devolve upon the attorney to show that the contract was free from all fraud, undue influence, and exorbitancy of demand. That the attorney having performed his part of the contract reasonably and with due skill and diligence, without regard to the result of the litigation, shall be entitled to recover the amount specified, provided he brings the contract within these principles. We have already stated that according to the proof defendants Camp & Duggan have shown satisfactorily that the execution of the note was not procured by fraud, either actual or constructive, but that it was executed freely, willingly and understandingly. The only other question is, did they contract for a greater benefit than their services were reasonably worth ?
On this subject the evidence is conflicting to some extent, but when carefully analyzed, there is not such conflict as at first blush appears.
We deem it unnecessary to enter into an analysis of the evidence. After a very close scrutiny 'of the evidence, the Chancellor came to the conclusion that the charge of $>750 for the services rendered was fair and reasonable, and we entirely concur with his conclusion. We therefore affirm his decree, except as to *172 so much of it as suspends the collection of seventy-five dollars until the termination of the suit which was pending when the note was executed. The costs below and here will be paid by complainant.